IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02909-NYW-CYC

MATTHEW SCHLAGEL,

Plaintiff,

v.

DISCOUNT TIRE COMPANY OF COLORADO, INC.,

Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss" or "Motion"). [Doc. 43, filed April 22, 2024]. Plaintiff Matthew Schlagel ("Plaintiff" or "Mr. Schlagel") has responded in opposition, [Doc. 46], and Defendant Discount Tire Company of Colorado ("Defendant" or "Discount Tire") has replied, [Doc. 52]. The Court finds that oral argument would not materially assist in the disposition of the Motion to Dismiss. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion to Dismiss is respectfully **GRANTED IN PART and DENIED IN PART**.

### BACKGROUND

The following facts are drawn from the operative First Amended Complaint and Jury Demand ("Amended Complaint"), [Doc. 33], and the Court presumes they are true for purposes of the Motion.

Mr. Schlagel worked for Discount Tire from August 2005 to October 2023. [*Id.* at ¶¶ 14, 84]. He alleges that he was promoted to store manager in January 2011 and

managed multiple Discount Tire locations from January 2011 to December 2016.  [*Id.* at ¶ 16].  From December 2016 to November 2021, Mr. Schlagel managed Defendant's store in Glenwood Springs, Colorado.  [*Id.* at ¶¶ 16, 31].

Mr. Schlagel alleges that he suffers from a number of severe mental health conditions.  [*Id.* at ¶ 19].  Combined with Mr. Schlagel's marital problems and eventual divorce, these conditions allegedly escalated into a "mental health crisis" in October 2021.  [*Id.* at ¶¶ 18–23].  Mr. Schlagel alleges that he informed his superiors at Discount Tire— including Vice President Paul Witherspoon ("Mr. Witherspoon") and Assistant Vice President Mikel Thrasher ("Mr. Thrasher")—of his mental health crisis in October 2021 and requested time off.  [*Id.* at ¶¶ 23–24].

Mr. Schlagel alleges that he first requested FMLA leave on November 2, 2021.  [*Id.* at ¶ 28].  He alleges that Mr. Thrasher and Mr. Witherspoon dissuaded him from taking FMLA leave and instead transferred him to a Denver area store to be closer to his friends and family.  [*Id.* at ¶¶ 28–31].  The transfer allegedly involved a demotion from store manager to "co-manager," which Defendant assured Mr. Schlagel would be temporary.  [*Id.* at ¶ 30].  Mr. Schlagel alleges that Mr. Witherspoon "dissuaded" him from requesting FMLA leave on two other occasions by telling Mr. Schlagel that taking FMLA leave would harm his career.  [*Id.* at ¶¶ 32, 35].  Plaintiff also alleges that Defendant waited from December 2021 to April 2022 to re-promote him to a store manager role as retaliation for inquiring about FMLA leave.  [*Id.* at ¶¶ 37–41].

After Mr. Schlagel resumed work as a store manager in April 2022, he alleges, Mr. Thrasher ignored his concerns regarding safety and staffing issues and unauthorized alterations to his timesheets.  [*Id.* at ¶¶ 42–43, 46].  Mr. Schlagel alleges that, due to a

"flare up" of his mental health conditions, he requested and took FMLA leave on February 13, 2023. [*Id.* at ¶ 48]. During this time, Mr. Thrasher allegedly made derogatory comments about Mr. Schlagel to Mr. Schlagel's employees. [*Id.* at ¶ 51].

On June 2023, Mr. Schlagel alleges that he informed Discount Tire that he was ready to return to work with accommodations for his mental health conditions. [*Id.* at ¶ 55]. He alleges that Defendant rejected "many" of his requested accommodations and did not permit him to return from unpaid leave until August 17, 2023. [*Id.* at ¶¶ 52, 55, 57]. Defendant also allegedly placed Mr. Schlagel at a lower-earning store, which limited his ability to earn bonuses. [*Id.* at ¶ 54].

Upon his return to work, Mr. Schlagel alleges that Defendant required him to comply with certain "Return-to-Work Expectations." [*Id.* at ¶ 58]. In relevant part, these expectations required Mr. Schlagel to clock in and out of every shift and restricted Mr. Schlagel from scheduling more employees than what Defendant's "scheduler software" calculated was necessary for Mr. Schlagel's store. [*Id.* at ¶¶ 58–59, 65]. Mr. Schlagel alleges that neither of these "expectations" were required prior to his FMLA leave. [*Id.* at ¶ 65]. He alleges that the scheduling restriction and software made it difficult to give his employees breaks. [*Id.* at ¶¶ 60–62, 75]. Because Defendant's scheduling software prevented managers from scheduling their employees' breaks in advance, Mr. Schlagel alleges that these problems persisted at other Discount Tire locations—though it is unclear whether any other managers were under similar "Expectations." [*Id.* at ¶¶ 60–64, 69]. Mr. Schlagel alleges that he raised these concerns to his superiors, but they "offered no solutions to Mr. Schlagel other than to tell him to provide breaks." [*Id.* at ¶¶ 70–74].

Mr. Schlagel alleges that he submitted a paid time off ("PTO") request after

returning from FMLA leave. [*Id.* at ¶ 79]. Although he had not yet accrued the PTO, Mr. Schlagel alleges that Defendant's policy permits him to use PTO hours that has not yet accrued but will be accrued by the end of the year. [*Id.* at ¶ 77]. Mr. Schlagel alleges that he requested 60 hours of PTO, which represented the total PTO he would have accrued between his return from FMLA leave and the end of 2023. [*Id.* at ¶¶ 78–79]. Mr. Thrasher allegedly denied the PTO request. [*Id.* at ¶ 79]. Mr. Schlagel resigned on October 5, 2023, which he alleges was prompted by the "working conditions, lack of accommodations, condescending practices, discriminatory practices, and retaliatory practices of Defendant." [*Id.* at ¶¶ 84, 131–32].[1]

Plaintiff initiated this lawsuit on November 2, 2023. [Doc. 1]. His Amended Complaint asserts nine claims:

(1)    Interference with his right to take leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611–20 ("Count One"), [Doc. 33 at ¶¶ 85–97];

(2)    Retaliation in violation of the FMLA ("Count Two"), [Doc. 33 at ¶¶ 98–105];

(3)    Constructive discharge in retaliation for taking FMLA leave in violation of the FMLA ("Count Three"), [*Id.* at ¶¶ 106–18];

(4)    Retaliatory Constructive Discharge in violation of the Colorado Wage Act ("CWA"), Colo. Rev. Stat. §§ 8-4-101 to -127 (2024) ("Count Four"), [Doc. 33 at ¶¶ 119–34];

(5)    Retaliation in violation of the Protected Health/Safety Expression and

---

[1] Mr. Schlagel refers to his separation from Defendant as a constructive discharge rather than a resignation. *See* [Doc. 33 at ¶ 84]. But the contention that Mr. Schlagel's working conditions elevate his resignation to a constructive discharge is a legal conclusion that the Court cannot accept as true in deciding the Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Whistleblower ("PHEW") law, Colo. Rev. Stat. §§ 8-14.4-101 to -109 (2024) ("Count Five"), [Doc. 33 at ¶¶ 135–49];

(6)     Interference with and retaliation for Mr. Schlagel's assertion of his right to sick leave, in violation of Colorado's Healthy Families and Workplaces Act ("HFWA"),[2] Colo. Rev. Stat. §§ 8-13.3-404 to -405 (2024) ("Count Six"), [Doc. 33 at ¶¶ 150–61];

(7)     Retaliation for Mr. Schlagel's assertion of his employees' right to meal breaks, in violation of the Colorado Overtime and Minimum Pay Standards Order #38 ("COMPS Order"), 7 Colo. Code Regs. § 1103-1 (2022) ("Count Seven"), [Doc. 33 at ¶¶ 162–68];

(8)     Disability discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-401 to -408 (2024), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 ("Count Eight"), [Doc. 33 at ¶¶ 169–76]; and

(9)     Retaliation in violation of the ADA and CADA ("Count Nine"), [Doc. 33 at ¶¶ 177–83].

In the instant Motion, Defendant argues that all nine claims should be dismissed under Rule 12(b)(6). *See generally* [Doc. 43]. The Parties have fully briefed the issues, *see* [Doc. 46; Doc. 52], and the Court considers the respective arguments below.

---

[2] The Amended Complaint does not label any claim as the "sixth" claim—it labels Mr. Schlagel's PHEW claim as his "fifth" claim and his HFWA claim as his "seventh" claim. [Doc. 33 at 22–24]; *see also* [Doc. 43 at 5 n.4]. The Court uses the numbers listed above to refer to Mr. Schlagel's claims rather than adopting the numerical labels in the Amended Complaint.

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

**I.    *Colorado River* Abstention**

Defendant contends that the Court should relinquish federal jurisdiction over Counts Four, Five, and Seven because those claims are currently subject to a lawsuit in Colorado state court.  [Doc. 43 at 5–7]; *see also* [Doc. 43-2].  The state case, *Seamon v. Discount Tire Co. of Colorado*, No. 23-cv-30691 (Dist. Ct. Pueblo Cnty.), involves a

putative class action alleging that Discount Tire violated failed to provide its employees with paid rest breaks, in violation of Colorado employment law. *See generally* [Doc. 43-2]. Mr. Schlagel provided a sworn declaration in support of the plaintiff's claims in *Seamon*. [*Id.* at ¶¶ 55–57]. Defendant argues that, because the *Seamon* case is parallel to Mr. Schlagel's suit, this Court should abstain from exercising jurisdiction over Counts Four, Five, and Seven. [Doc. 43 at 6–7].

The *Colorado River* abstention doctrine permits federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" where the federal court would otherwise have concurrent jurisdiction with the state court. *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, "declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in exceptional circumstances." *Id.* at 1081 (quotation omitted). The Supreme Court has cautioned that granting a stay or dismissal pursuant to the *Colorado River* doctrine would be "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Thus, the Court's task "is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Id.* at 25–26 (quotation and emphasis omitted).

Application of the *Colorado River* doctrine requires a two-part analysis. First, "a federal court must first determine whether the state and federal proceedings are parallel." *Maulding*, 16 F.3d at 1081. If the proceedings are parallel, then courts consider a "nonexclusive list of factors" to determine whether "exceptional circumstances" exist to warrant deference to the parallel state proceedings. *Id.* at 1082. With respect to the first requirement, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 1081 (quotation omitted). The Court examines "the state proceedings *as they actually exist* to determine whether they are parallel to the federal proceedings, resolving any doubt in favor of exercising federal jurisdiction." *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995) (cleaned up).

Here, Defendant argues that *Seamon* is parallel with Counts Four, Five, and Seven of the Amended Complaint because the claims "are all based on the same conduct": the practices maintained by Discount Tire that allegedly denied its employees rest breaks. [Doc. 43 at 6]. But while the claims in *Seamon* turn on whether Defendant unlawfully deprived the putative class of paid breaks, *see* [Doc. 43-2 at ¶¶ 6–7], the Court need not make such a determination here. Counts Four, Five, and Seven all allege that Defendant retaliated against Plaintiff for *complaining* that Defendant's policies violated Colorado's rest break requirements. *See generally* [Doc. 33 at ¶¶ 119–49, 162–68]. While the reasonableness of Plaintiff's complaints may be relevant, *see* Colo. Rev. Stat. § 8-14.4-102, the Court can resolve Counts Four, Five, and Seven without deciding whether Plaintiff was correct that Defendant violated its employees' right to rest breaks under Colorado law. As Defendant points out, Mr. Schlagel seeks to recover damages "stemming from the loss of his job," whereas *Seamon* seeks back wages and statutory

damages for the lost rest breaks.  [Doc. 46 at 6; Doc. 43-2 at 11].  Finally, Mr. Schlagel is not a party to *Seamon* and involved in that case only as a witness.  [Doc. 43-2 at ¶¶ 55–57; Doc. 46 at 6].  The Court therefore concludes that neither the parties nor the issues in *Seamon* are substantially the same as this lawsuit.  As such, *Seamon* cannot be an "adequate vehicle" for resolution of the issues raised in Counts Four, Five, and Seven. *Moses*, 460 U.S. at 28.  And because the two cases are not parallel, the Court need not reach the second step of the *Colorado River* analysis.  Accordingly, Court declines to invoke *Colorado River* abstention as to Counts Four, Five, and Seven.

## II.    Count One:  FMLA Interference

Count One alleges that Defendant interfered with Plaintiff's right to FMLA leave by telling him that taking FMLA leave would hurt his career, demoting him after he expressed interest in taking FMLA leave, and refusing to promote him back to a store manager position for five months.  [Doc. 33 at ¶¶ 85–97].

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" if the employee experiences "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  An employee is "eligible" for leave if he has (1) worked for his employer for at least 12 months, and (2) worked at least 1,250 hours for the employer during the previous 12-month period.  § 2611(2)(A).  An employee who takes and returns from FMLA leave is entitled to be "restored" to either "the position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  § 2614(a)(1).  The FMLA permits an employee to recover damages from

an employer who "interfere[s] with, restrain[s], or den[ies]" the employee's exercise of his FMLA rights.  §§ 2615(a)(1), 2617(a).

A claim for FMLA interference arises from adverse employment actions taken before or during an employee's FMLA leave.[3]  *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 (10th Cir. 2014).  To state an FMLA interference claim, a plaintiff must allege: "(1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights."  *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005).  If an employee satisfies the first two elements, the employer bears the burden of showing that the adverse action was unrelated to the employee's assertion of FMLA rights.  *Dalpiaz*, 760 F.3d at 1132.

The first element of Plaintiff's FMLA interference claim appears to be uncontested. Defendant does not dispute that Plaintiff has alleged he was eligible for FMLA leave and suffered from a serious health condition.  *See* [Doc. 33 at ¶¶ 14, 16, 19, 22].  *See generally* [Doc. 43].  The Court therefore turns to whether Plaintiff has satisfied the remaining elements of his interference claim.

## A.    Adverse Action

The second element of an FMLA interference claim requires an employee to allege an adverse employment action that interfered with the employee's FMLA rights.  *Jones*,

---

[3] By contrast, an FMLA retaliation claim may arise from actions taken before, during, or after an employee takes FMLA leave or participates in another "protected activity."  *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287–88 (10th Cir. 2007); *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043 (D.N.M. 2017) (explaining that *Campbell*'s statement that retaliation claims may arise from post-leave conduct does not mean that retaliation claims cannot arise from actions taken before or during FMLA leave).

427 F.3d at 1319.  To satisfy this element, an employee must show that he was "prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Dalpiaz*, 760 F.3d at 1132 (brackets and quotation omitted); *see also Dry v. Boeing Co.*, 92 F. App'x 675, 678 (10th Cir. 2004) ("[A] prima facie case under an interference[] theory requires . . . a denial of substantive rights under the FMLA.").  Here, Mr. Schlagel alleges two possible adverse actions:  (1) Defendant's demotion and delayed re-promotion of Mr. Schlagel when he transferred to a Denver area store before taking FMLA leave, [Doc. 33 at ¶¶ 29–30, 37–41]; and (2) the various efforts by Mr. Schlagel's superiors to dissuade him from taking FMLA leave, [*id.* at ¶¶ 28, 35].  However, Plaintiff frames the alleged demotion as retaliation for his inquiring about FMLA leave, rather than as an obstruction or deterrent to his eventual taking of FMLA leave.  [*Id.* at ¶¶ 37–40, 54; Doc. 46 at 8].  The Court therefore reserves the issue of Plaintiff's alleged demotion for its discussion of his retaliation claims and addresses only the discouraging conduct under an interference framework.

The Parties dispute whether Plaintiff's allegations as to his superiors' attempts to discourage him from taking FMLA leave satisfy the adverse action requirement. Defendant argues that the "comments surrounding [Plaintiff's] FMLA leave . . . cannot constitute interference as a matter of law."  [Doc. 43 at 8 (citing *Ford v. Brennan*, No. 21-4086, 2023 WL 5606233, at *3 (10th Cir. Aug. 30, 2023))].  And because Plaintiff does not allege that he was denied permission to take FMLA leave, Defendant concludes that the critical comments alone do not satisfy the second element of an FMLA claim.  [*Id.*].

Plaintiff responds that *Ford* is distinguishable because the alleged critical comments in *Ford* occurred after the employee returned from leave and thus could not have prevented him from taking his FMLA leave.  [Doc. 46 at 9]; *see also Ford*, 2023 WL 5606233, at *2.  Mr. Schlagel alleges that after he obtained FMLA paperwork from his doctor and expressed an intent to take leave, Defendant "informed Mr. Schlagel taking FMLA leave would harm his career, would cause a loss of career opportunities, and would remove him from advancement and bonus opportunities."  [Doc. 33 at ¶ 35].  And on February 13, 2023, the same day that Mr. Schlagel formally requested FMLA leave, Mr. Thrasher allegedly sent him disciplinary forms summarizing Mr. Schlagel's "performance issues."[4]  [*Id.* at ¶ 47].  Because Defendant's alleged verbal and written comments convinced Plaintiff to delay his leave, Plaintiff concludes that Defendant interfered with his FMLA rights.  [Doc. 46 at 9–10].

The Tenth Circuit has recognized that "interference" with an employee's right to FMLA leave may include "not only refusing to authorize FMLA leave, *but discouraging an employee from using such leave.*"  *Mardis v. Cent. Nat'l Bank & Tr. of Enid*, No. 98-6056, 1999 WL 218903, at *2 (10th Cir. Apr. 15, 1999) (quoting 29 C.F.R. § 825.220(b)).  In *Mardis*, the Tenth Circuit found that an employer's statement to an employee that taking FMLA leave would result in the loss of all accrued sick and annual leave "would operate as a powerful disincentive" against an employee's assertion of FMLA rights.  *Id.*  However,

---

[4] The Court reaches its conclusion without regard to the contents of the disciplinary form, which Plaintiff attached to his initial Complaint as Exhibit 4.  *See* [Doc. 1-5].  Although Plaintiff references the form in his Amended Complaint, [Doc. 33 at ¶ 47], Defendant correctly points out that Plaintiff's references to the attachments to his initial Complaint violate Local Rule 15.1(b).  [Doc. 43 at 14]; D.C.COLO.LCivR 15.1(b) ("Unless otherwise ordered, the proposed amended or supplemental pleading shall not incorporate by reference any part of the preceding pleading, including exhibits.").

"[m]ere postponement" or a "temporary restriction" of benefits "would likely not constitute actionable discouragement." *Id.* at *3. Other circuits have similarly held that interference exists "[w]here an employer attaches negative consequences to the exercise of protected rights" such that an employee's willingness to exercise those rights is "chilled." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)). The *Ford* decision does not conflict with these cases: comments that merely criticize an employee for taking leave, especially those made after an employee returns from leave, do not create a "powerful disincentive" to an employee's assertion of FMLA rights. *See Ford*, 2023 WL 5606233, at *3. Finally, the Court remains mindful that the FMLA does not entitle an employee to the accrual of benefits during leave or any other "right, benefit, or position" that the employee would have received had he not taken leave, 29 U.S.C. § 2614(3), so an employer's statements that merely inform an employee of these limitations likely do not rise to the level of "actionable discouragement," *Mardis*, 1999 WL 218903, at *3.

Viewing the Amended Complaint's allegations in the light most favorable to Mr. Schlagel, *Casanova*, 595 F.3d at 1124, the Court finds that the alleged statements by Mr. Schlagel's superiors went further than to inform him that he would not accrue benefits during FMLA leave, or warn him of a temporary restriction of advancement and bonus opportunities. The statement that taking leave would "remove" Mr. Schlagel from advancement opportunities and inflict overall harm to his career suggests a more permanent negative consequence to Mr. Schlagel's assertion of his FMLA rights. Mr. Schlagel alleges that he perceived it that way, i.e., that the discouraging statements

13

caused him to delay his formal leave request for over a year.  [Doc. 33 at ¶¶ 35, 48].[5]

And the fact that Mr. Schlagel received a disciplinary form addressing his purported

performance issues on the same day he submitted his leave request would seem to justify

his fears.  [*Id.* at ¶ 47]; *see also Martin v. Canon Bus. Sols., Inc.*, No. 11-cv-02565-WJM-

KMT, 2013 WL 4838913, at *4 (D. Colo. Sept. 10, 2023) (denying summary judgment on

interference claim where plaintiff received written warning of poor performance "within

days" of notifying employer of her need for FMLA leave).  The Court therefore concludes

that Mr. Schlagel has adequately alleged that Defendant took an adverse action that

interfered with his right to FMLA leave.

### B.    Causation

The third and final element of an FMLA claim requires that the alleged adverse

employment action was "related to the exercise or attempted exercise of [Plaintiff's] FMLA

rights."  *Jones*, 427 F.3d at 1319.  Defendant bears the burden of showing that the

adverse action was unrelated to the assertion of FMLA rights.  *Dalpiaz*, 760 F.3d at 1132.

Here, Plaintiff has alleged that both the discouraging statements and disciplinary forms

were related to his medical condition and assertion of his right to FMLA leave.  [Doc. 33

at ¶¶ 35, 47].  Defendant does not question the sufficiency of these allegations with

respect to the causation element.  The Court concludes that Mr. Schlagel has adequately

---

[5] Contrary to Defendant's assertion, [Doc. 52 at 5], Plaintiff does provide dates for these
events:  the alleged discouraging statements occurred on November 23, 2021, and he
received the alleged discipline form on February 13, 2023, [Doc. 33 at ¶¶ 35, 48].  Taking
these factual allegations as true, the Court perceives no issue as to whether Plaintiff
adequately alleges that Defendant had notice of Plaintiff's intent to request FMLA leave
on the relevant dates.  *See* [Doc. 52 at 5].

alleged all three elements of an FMLA claim.  The Motion is respectfully **DENIED** as to
Count One.

### III.    Counts Two and Three:  FMLA Retaliation

Count Two alleges that Defendant retaliated against Plaintiff for his assertion of
his FMLA rights, and Count Three alleges that Defendant's retaliation amounted to a
constructive discharge of Plaintiff.   [*Id.* at ¶¶ 98–118].   FMLA retaliation claims are
scrutinized under the *McDonnell Douglas* burden-shifting framework.   *Metzler v. Fed.
Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006); *see also McDonnell
Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).   At the motion-to-dismiss stage,
however, courts go no further than "the first step of the *McDonnell Douglas* framework:
the elements [Plaintiff] would need to establish to prove a prima-facie case" of retaliation.
*Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015).  To state
a prima facie case of retaliation, Mr. Schlagel must allege that:   "(1) [he] engaged in a
protected activity; (2) [Defendant] took an action that a reasonable employee would have
found materially adverse; and (3) there exists a causal connection between the protected
activity and the adverse action."  *Metzler*, 464 F.3d at 1171 (footnote omitted).

#### A.    Count Two

Plaintiff's allegations of Defendant's retaliatory conduct fall into two categories:
(1) retaliation for his inquiries into and informal request for leave in November 2021; and
(2) retaliation for his taking leave, occurring after his return from leave in August 2023.  In
retaliation for his informal leave request, Plaintiff alleges that Defendant demoted him,
delayed his re-promotion, and later altered his timecards.  [Doc. 33 at ¶¶ 30, 37–40, 42,
54, 103].   And after he returned from leave, Plaintiff alleges, Defendant reduced his

compensation by placing him at a lower-earning store, [*id.* at ¶¶ 100, 102]; restricted his discretion in scheduling his employees, [*id.* at ¶¶ 59–60]; required him to clock in and out, [*id.* at ¶ 65]; and prevented him from attending the annual company party, [*id.* at ¶ 67]. Defendant argues that each of these actions is either not adverse or not connected to Plaintiff's FMLA activity.

### 1. Protected Activity

The Parties do not dispute that Plaintiff has satisfied the first requirement of his retaliation claim. *See* [Doc. 43 at 9; Doc. 46 at 10]. It is well-settled that taking FMLA leave constitutes protected activity. *E.g.*, *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1005 (10th Cir. 2011). Mr. Schlagel's other alleged protected activity presents a closer call. Specifically, he alleges that he made an informal FMLA request on November 2, 2021 when he "informed [his superiors] that he needed to take FMLA leave," after he had previously notified them of his "mental health crisis." [Doc. 33 at ¶¶ 23–24, 28]. Later in the month, he made further inquiries into possible FMLA leave without submitting a formal leave request. [*Id.* at ¶¶ 28, 32]; *see also* [*id.* at ¶ 35 ("Mr. Schlagel did not submit the request for FMLA leave.")].

The Tenth Circuit has held that "giving an employer notice of intent to take FMLA leave, at least where the employee qualifies for that leave, is protected activity," even if the employee does not actually take leave. *Wehrley v. Am. Fam. Mut. Ins. Co.*, 513 F. App'x 733, 742 (10th Cir. 2013); *id.* at 736, 743 (finding plaintiff satisfied protected activity requirement where he told his employer that "he planned to apply for FMLA [leave] once [his] surgery was scheduled"). It is not clear that Mr. Schlagel intended his statement to his employer that he "needed" to take FMLA to be a notice of intent to take leave—Mr.

Schlagel appears to instead view it as an informal request for leave. *See, e.g.*, [Doc. 46 at 10]. But the definition for "notice of intent" is not strict. *See Wehrley*, 513 F. App'x at 742 ("The right to take leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future." (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (ellipsis omitted)). And because the FMLA and Department of Labor regulations require an employee notify his employer of his need for FMLA leave,[6] the November 2 meeting between Mr. Schlagel and his supervisors appears to be a protected "attempt to exercise" Mr. Schlagel's FMLA rights. 29 U.S.C. § 2615(a)(1). Other circuits have followed similar logic to find that an employee's "initial request for leave" or "notice of need" is protected activity. *Milman v. Fieger & Fieger P.C.*, 58 F.4th 860, 868–70 (6th Cir. 2023) ("Without protection, employees would be discouraged from taking authorized initial steps—including preparing or formulating a request—to access FMLA benefits."); *McArdle v. Town of Dracut/Dracut Pub. Schs.*, 732 F.3d 29, 36 (1st Cir. 2013) (observing, in dicta, that barring retaliation claims based on an employee's inquiries into his FMLA eligibility would create an "ask at your peril" approach that could deter employees from attempting to exercise their rights); *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1000 (8th Cir. 2011) (recognizing that the FMLA's protections apply to an employee who "provides enough information to put the employer on notice that the employee may be in need of FMLA leave" (quotation omitted)). Regardless of whether Mr. Schlagel's statement that he needed FMLA leave is viewed as a notice of

---

[6] An employee must give his employer 30 days' notice for "foreseeable leave" under 29 U.S.C. §2612(e)(1). Department of Labor regulations require an employee to provide notice "as soon as practicable" when the need for leave is unforeseeable. *See* 29 C.F.R. § 825.303.

intent to take leave or an informal request for leave, the Court finds that he has sufficiently alleged protected activity for purposes of a prima facie case of retaliation.

## 2. Adverse Action

The second element of a retaliation claim requires "an action that a reasonable employee would have found materially adverse." *Campbell*, 478 F.3d at 1287 (quotation omitted). "[T]he phrase 'adverse employment action' should be liberally defined and is not limited to monetary losses in the form of wages or benefits." *Weil v. Carecore Nat'l LLC*, 833 F. Supp. 2d 1289, 1298 (D. Colo. 2011) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)). "However, a mere inconvenience or an alteration of job responsibilities[] will not suffice." *Annett*, 371 F.3d at 1239 (quotation omitted).[7] To allege an adverse employment action, Plaintiff must point to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 1237–38 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Some of the alleged conduct that Plaintiff points to in his Response falls far short of adverse action. [Doc. 46 at 10–11]. The Court finds that the allegations that Defendant restricted Plaintiff's discretion in scheduling his employees, [Doc. 33 at ¶¶ 59–60], and required him to clock in and out, [*id.* at ¶ 65], are mere inconveniences and insignificant alterations of Plaintiff's job responsibilities, *see Annett*, 371 F.3d at 1239; *Weil*, 833 F. Supp. 2d at 1298 (finding that revocation of employee's remote work privilege, although "burdensome," did not constitute adverse action). Similarly, Plaintiff's allegation that he

---

[7] Although *Annett* involved a Title VII retaliation claim, 371 F.3d at 1237, the same definition of "adverse employment action" applies to FMLA retaliation claims, *Metzler*, 464 F.3d at 1171 n.2.

was not invited to Defendant's annual company party does not constitute a "significant change in employment status."  *Annett*, at 1237.  The Court also agrees with Defendant that Plaintiff's transfer and demotion from a position as store manager in Glenwood Springs to a position as co-manager in Denver cannot be considered adverse employment action because Plaintiff agreed to the transfer and demotion.  [Doc. 33 at ¶¶ 28–29; Doc. 43 at 10]; *see also Isiramen v. Yuma Reg'l Med. Ctr.*, 838 F. App'x 298, 299 (9th Cir. 2021) ("[T]here is no case law supporting the assertion that a voluntary transfer . . . can qualify as a retaliatory adverse action."); *Ramos v. Lynch*, 267 F. Supp. 3d 39, 50 (D.D.C. 2017) (finding no adverse action where "plaintiff herself requested the transfer . . . [and] accepted the position change—including the demotion").

   *Timecard Alterations.*  For Plaintiff's remaining allegations, the Court finds that Plaintiff has alleged an adverse employment action.  First, Plaintiff alleges that alterations to his timecards in October 2022 cost him $875 and deprived him of three days of PTO.  [Doc. 33 at ¶ 42].  The Court finds that this alleged loss of pay and PTO constitutes a "material loss of benefits" sufficient to sustain a retaliation claim.  *Burlington*, 524 U.S. at 761; *see also Russell v. Principi*, 257 F.3d 815, 818–19 (D.C. Cir. 2001) (finding that poor performance evaluation causing "the loss of a bonus . . . worth hundreds of dollars" amounted to adverse employment action).

   *Assignment to Lower-Earning Store.*  Second, Plaintiff appears to allege that, after he returned from leave, Defendant assigned him to a lower-earning store than the location where he worked before taking leave.  [Doc. 33 at ¶¶ 54, 81, 102].  The key allegations in Paragraph 54 of the Amended Complaint are not entirely clear, but the Court perceives the alleged timeline as:  (1) Plaintiff transferred voluntarily to a lower-

earning store in November 2021, where he worked as "co-manager"; (2) Plaintiff was promoted to store manager and transferred to another, higher-earning store in April 2022; (3) Plaintiff took FMLA leave from February 2023 to August 2023; (4) when Plaintiff returned from FMLA leave, Defendant placed him back at the former, lower-earning store rather than the latter, higher-earning store. *See* [*id.* at ¶¶ 31, 41, 44, 54, 81]. Defendant does not credit the second step of this timeline, presumably because Mr. Schlagel does not explicitly allege that when he was "restored to a manager position," he was also transferred to a higher-earning location. [*Id.* at ¶ 41; Doc. 43 at 10]. At this stage of litigation, however, the Court views the allegations in the light most favorable to Plaintiff, and it accepts as true Plaintiff's allegation that he was placed in a lower-earning store after returning from leave. While a reassignment that amounts to "a purely lateral transfer is not an adverse employment action," *Trujillo v. N.M. Dep't of Corrs.*, No. 98-2143, 1999 WL 194151, at *3 (10th Cir. Apr. 8, 1999), the Court finds that Mr. Schlagel has sufficiently alleged that his placement at a lower-earning store reduced his ability to earn bonuses, costing him "$175,000 to $300,000 in annual bonuses," [Doc. 33 at ¶ 54]; *cf. Miller-Spencer v. Dillon Cos.*, No. 09-cv-02470-CM, 2010 WL 4792393, at *5 (D. Kan. Nov. 18, 2010) (granting summary judgment as to adverse action requirement where evidence did not support plaintiff's assumption that transfer to "a lower-volume store directly translates to a lower bonus payout"). The Court finds that the alleged loss of bonus opportunities qualifies as an adverse employment action.

***Delayed Promotion.*** Finally, Plaintiff alleges that after his voluntary demotion in November 2021, Defendant delayed his re-promotion from January 2022 to April 2022 by twice denying him from entering the lottery for open store manager positions. [Doc. 33 at

¶¶ 37–41].  He alleges that the delay cost him $6,000 per month in "Manager's Bonus."
[*Id.* at ¶ 38].  The Tenth Circuit has not addressed whether a promotion that is merely
delayed, as opposed to denied entirely, may constitute adverse employment action.  Nor
has a consensus emerged among the persuasive authorities that have taken up the issue.
*See, e.g.*, *Tierney v. City of New York*, No. 02-cv-02403-RWS, 2007 WL 895133, at *24–
25 (S.D.N.Y. Mar. 20, 2007) (collecting cases and recognizing that delayed promotion
may constitute adverse employment action); *Marshall v. Ill. Dep't of Hum. Servs.*, No. 00-
cv-04680, 2004 WL 432461, at *6 (N.D. Ill. Feb. 18, 2004) (finding two to three month
delay did not constitute adverse employment action where, on "most" days during delay,
employee was paid as if she had been promoted); *Pennington v. City of Huntsville*, 261
F.3d 1262, 1267 (11th Cir. 2001) (observing that delayed promotion causing loss of pay
or benefits is not adverse action if employee receives backpay); *Aragon v. Romero*, No.
97-cv-01000-JC-RLP, 1998 WL 36030272, at *3 (D.N.M. Oct. 26, 1998) (suggesting that
nine or ten month delay in promotion constitutes adverse employment action).  *But see,
e.g.*, *Jeffrey v. Montefiore Med. Ctr.*, No. 11-cv-06400-RA, 2013 WL 5434635, at *20
(S.D.N.Y. Sept. 27, 2013) ("[E]ven if . . . Plaintiff should have been promoted in January
2009 rather than March 2009, it is a failure to promote, not a failure to *quickly* promote
that makes an employment action materially adverse."); *Blakely v. Schlumberger Tech.
Corp.*, No. 4:07-cv-01064-WRW, 2009 WL 564456, at *3 & n.32 (E.D. Ark. Mar. 5, 2009)
(noting that alleged delay of three and a half or five months could not establish adverse
action because "a temporary delay in a promotion, even with a loss of pay, does not
amount to adverse employment action when it is corrected in a timely manner" (collecting
cases)).

This Court agrees with the observation that the "relevant inquiry" appears to be "whether the alleged delay in promotion carried with it any identifiable adverse consequences." *Byrne v. Telesector Res. Grp., Inc.*, No. 04-cv-00076-S, 2007 WL 962929, at *9 (W.D.N.Y. Mar. 29, 2007).   This Court also notes that most of these decisions occurred at the summary judgment stage.  *See id.* (collecting cases).  Here, Mr. Schlagel has alleged that he was arbitrarily withheld from promotion for three months, causing a loss of pay for which he never received backpay.  The Court concludes that the delay and loss of bonus pay plausibly allege an adverse employment action that satisfies the second prong of a retaliation claim.

### 3.    Causation

The Court turns to the third element of Mr. Schlagel's prima facie case of retaliation.   To adequately allege this element, Mr. Schlagel must show a causal connection between his protected activities and the adverse actions.  *Metzler*, 464 F.3d at 1171.   The "critical inquiry" is "whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination."   *Id.* (cleaned up).   Temporal proximity is relevant to this determination, because "[a] retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999).   For a plaintiff to rely solely on temporal proximity, however, the alleged retaliation must be "*very closely* connected in time to the protected activity." *Id.* (observing that one and a half month period between protected activity and retaliation may establish causation, but three month period, without more, is insufficient).

Here, Defendant challenges only whether the alleged alteration of Plaintiff's timecards is causally connected to his protected activities. [Doc. 43 at 10–11]. The Court agrees that, with respect to the timecard alterations, Plaintiff fails to demonstrate circumstances supporting an inference of retaliation. The alleged alterations occurred in October 2022, nearly a year after Mr. Schlagel's informal leave request. *See* [Doc. 33 at ¶¶ 28, 42]. The timecard alterations also occurred nine months after the delayed promotion, the only prior adverse action alleged by Mr. Schlagel. [*Id.* at ¶¶ 39–40]. Such gaps in time cut against a finding of temporal proximity to support causation, *cf. Anderson*, 181 F.3d at 1179, and Mr. Schlagel alleges no other evidence suggesting that the timecard alterations were motivated by his protected conduct. Accordingly, Plaintiff fails to plausibly allege any connection between the alleged timecard alterations and his informal request for FMLA leave.

Count Two survives, however, because Plaintiff has adequately alleged a causal connection for his delayed promotion and for his placement at a lower-earning store following his FMLA leave. The delays to Mr. Schlagel's promotion allegedly occurred in January 2022, about two months after Mr. Schlagel made his informal leave request. [Doc. 33 at ¶¶ 39–41]. More importantly, Mr. Schlagel alleges that Mr. Witherspoon told him that "he would not be considered for a promotion because Mr. Schlagel was not fit for a management position because he inquired about FMLA medical leave." [*Id.* at ¶ 40]. This plainly suffices to demonstrate a causal connection between Mr. Schlagel's informal leave request and the delayed promotion. Mr. Schlagel's alleged placement at a lower-earning store also satisfies the causation requirement. Temporal proximity alone suggests an inference of retaliatory motive, because the placement at the lower earning

store occurred contemporaneously with his return from FMLA leave.  [*Id.* at ¶¶ 54, 81];
*see also Anderson*, 181 F.3d at 1179.  Accordingly, the Court concludes that Mr. Schlagel
has adequately alleged a prima facie case of retaliation as to his delayed promotion and
his placement at a lower-earning store.  With respect to these two instances of conduct,
the Motion is respectfully **DENIED**.  As to all other alleged retaliatory conduct, the Motion
is **GRANTED**, and Count Two is **DISMISSED without prejudice**.

>     B.    **Count Three**

Mr. Schlagel also seeks to bring a retaliation claim based on a constructive
discharge theory.  [Doc. 33 at ¶¶ 106–118].  An employee's constructive discharge may
satisfy the "adverse employment action" element of an FMLA retaliation claim.  *See
Turnwall v. Trust Co. of Am.*, 146 F. App'x 983, 986–87 (10th Cir. 2005).  Mr. Schlagel's
burden to demonstrate constructive discharge is substantial.  *Strickland v. UPS, Inc.*, 555
F.3d 1224, 1228 (10th Cir. 2009).  "Constructive discharge occurs when an employer
unlawfully creates working conditions so intolerable that a reasonable person in the
employee's position would feel forced to resign."  *Id.* (quotation omitted).  "The question
is not whether the employee's resignation resulted from the employer's actions, but
whether the employee had any other reasonable choice but to resign in light of those
actions."  *Tran v. Trs. of State Colls. of Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004).  Thus,
conduct that qualifies as an "adverse employment action" is "not necessarily sufficient to
establish a constructive discharge because a constructive discharge requires a showing
that the working conditions imposed by the employer are not only tangible or adverse, but
intolerable."  *Id.* at 1270–71.  When assessing a constructive discharge claim, courts

apply an objective standard: "the employer's subjective intent and the employee's subjective views on the situation are irrelevant." *Strickland*, 555 F.3d at 1228.

Mr. Schlagel alleges that he was constructively discharged because, after his return from FMLA leave, Defendant placed him at a lower-earning store, restricted his discretion in scheduling his employees, and ignored his concerns about his ability to adequately schedule his employees. [Doc. 33 at ¶¶ 111–14]. Elsewhere in the Amended Complaint, Mr. Schlagel alleges that he was required to clock in and out—unlike other managers—and not invited to Defendant's annual company party. [*Id.* at ¶¶ 65, 67].

The Court does not doubt that Mr. Schlagel found these conditions difficult, but the alleged conduct falls short of the lofty showing required to establish constructive discharge. The restrictions imposed on Mr. Schlagel upon his return from leave are "ordinary workplace tribulations" rather than intolerable conditions. *Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 914 (10th Cir. 2012) (finding that "strict application of policies, increased supervision, write-ups, means and methods of communication with [plaintiff's] supervisors, and restrictions on her employment relationships" did not amount to a hostile work environment—a lower bar than constructive discharge); *Tran*, 355 F.3d at 1271 (holding that "close supervision" of employee did not support inference of intolerability). The Court cannot consider Mr. Schlagel's subjective belief that the requirement to comply with Defendant's companywide scheduling policy put him in danger of personal liability for violations of Colorado employment law—and, in any case, he provides no support for that assertion. [Doc. 33 at ¶ 75].

Although Mr. Schlagel's contention that he was assigned to a lower-earning store, which reduced his likelihood of earning certain bonuses is sufficiently alleged to satisfy

the element requiring an adverse action at this juncture, the Court cannot find the same with respect to the allegation that his placement was intolerable. Even reassignments that include a salary reduction are not a per se constructive discharge. *See Kreimeyer v. Hercules Inc.*, 892 F. Supp. 1360, 1363 (D. Utah 1994) (collecting cases); *cf. Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 797 (8th Cir. 1996) ("[A] reduction in pay does not necessarily constitute a constructive discharge."). And here, there is no allegation that Mr. Schlagel's placement upon his return from leave included a lesser job title, responsibilities, salary,[8] or geographic location. *See* [Doc. 33]. The lower-earning location may have been less desirable to Mr. Schlagel, but he has not alleged—even in combination with the other restrictions imposed by Defendant—that his employment conditions were so objectively intolerable that a reasonable person would have felt he had no choice but to resign. *Tran*, 355 F.3d at 1270. The Motion is **GRANTED** as to Count Three, and Count Three is **DISMISSED without prejudice**.

## IV.    Count Four:  CWA Retaliatory Constructive Discharge

The CWA prohibits retaliation against employees who have "[f]iled any complaint" under any laws or rules related to wages and hours. Colo. Rev. Stat. § 8-4-120(1)(a). Like FMLA retaliation claims, the *McDonnell Douglas* framework governs CWA retaliation claims. *Jones v. Peopleready Inc.*, No. 21-cv-01688-PAB-MEH, 2022 WL 2176286, at *6

---

[8] The Court does not view a reduction in Plaintiff's likelihood of obtaining certain bonuses as tantamount to a salary reduction. *See Bond v. Wells Fargo Bank NA*, No. 21-cv-00830-PHX-JJT, 2023 WL 155857, at *3 (D. Ariz. Jan. 11, 2023) (finding that "substantial cut in pay, cut in annual raise, loss of bonus, and a less prestigious job title with lower earning and promotion potential" did not constitute "objectively egregious working conditions" to sustain constructive discharge claim); *cf. Coker v. Dixie Motors, Inc.*, Nos. 01-cv-00097 & 01-cv-00192, 2002 WL 31890935, at *3 (E.D. La. Dec. 30, 2002) ("Commission lost on hypothetical sales is not an adverse employment action.").

(D. Colo. June 16, 2022).  The elements of a prima facie case for CWA retaliation are also identical to those of an FMLA retaliation claim:  "(1) Plaintiff engaged in protected activity, (2) Plaintiff suffered adverse action by Defendant after or contemporaneously with the protected activity, and (3) a causal relationship between Plaintiff's protected activity and Defendant's adverse action."  *Id.*

Plaintiff alleges that, because of his complaints about Defendant's alleged CWA violations, he was constructively discharged.  [Doc. 33 at ¶¶ 122–31].  In other words, the "adverse action" that Plaintiff alleges for Count Four is a constructive discharge.  But Colorado courts apply the same standard for constructive discharge as the federal courts:

> To prove constructive discharge, a plaintiff must establish deliberate action on the part of an employer that makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign.  *Wilson v. Bd. of Cnty. Comm'rs*, 703 P.2d 1257, 1259 (Colo. 1985).  The determination of whether the actions of an employer amount to a constructive discharge depends on whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable and not on the subjective view of the employee.  *Id.* at 1259–60.

*Potts v. Gaia Children, LLC*, 555 P.3d 82, 88 (Colo. App. 2024).  The Court has already concluded that the working conditions experienced by Mr. Schlagel prior to his resignation did not rise to the level of constructive discharge.  And the allegedly intolerable conditions relevant to Count Four are the same as the conditions the Court addressed in its analysis of Court Three.[9]  *Compare* [Doc. 33 at ¶¶ 106–18], *with* [*id.* at ¶¶ 119–34].  The Court concludes that Mr. Schlagel fails to adequately allege constructive discharge and

---

[9] The Court does not consider the alleged alterations of Plaintiff's timecards.  The alleged alterations occurred in October 2022 and Plaintiff alleges that his complaints as to Defendant's wage and hour practices did not begin until January 2023.  [Doc. 33 at ¶¶ 123–24].

therefore fails to state a prima facie claim for CWA retaliation.  Accordingly, the Motion is **GRANTED** as to Count Four, and Count Four is **DISMISSED without prejudice**.

## V.    Count Five:  PHEW Retaliation

Defendant alleges that Count Five fails to state a claim for retaliation under Colorado's PHEW law because he has not adequately alleged an adverse employment action.  [Doc. 43 at 15].  The PHEW law prohibits a "principal" from retaliating against a "worker" who, "in good faith, rais[es] any reasonable concern about workplace violations of government health or safety rules."  Colo. Rev. Stat. § 8-14.4-102(1).  A recent decision from this District observed that "the Colorado Supreme Court has not yet interpreted PHEW, and there are no other relevant decisions applying PHEW as of the date of this order."  *Mitchell v. S. Health Partners, Inc.*, 699 F. Supp. 3d 1149, 1158 (D. Colo. 2023).  This Court is aware of no decisions from the Colorado Supreme Court or Colorado Court of Appeals that have addressed a PHEW retaliation claim in the short time since *Mitchell* was decided.  Another court in this District—the only other court to confront a PHEW claim—declined to exercise supplemental jurisdiction over the claim because it found the PHEW retaliation claim presented a novel question of state law.  *See Littlewood v. Novartis Pharms. Corp.*, No. 21-cv-02559-CMA-SKC, 2022 WL 3081919, at *7 (D. Colo. Aug. 3, 2022).  Based on the record before it, this Court respectfully declines to exercise supplemental jurisdiction over Count Five.

Federal courts exercise supplemental jurisdiction over state law claims when the state claims "form part of the same case or controversy" as federal claims.  28 U.S.C. § 1367(a).  But supplemental jurisdiction "need not be exercised in every case in which it is found to exist."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  The

Court has discretion to decline supplemental jurisdiction if, inter alia, a claim "raises a novel or complex issue of state law." § 1367(c)(1); *see also Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  A novel question of state law may exist where "there is no controlling precedent on the issue." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1085 (10th Cir. 2011).

Plaintiff's PHEW retaliation claim raises a novel question of state law.  The Colorado Supreme Court has not yet issued any controlling authority on the issue, nor has the Colorado Court of Appeals provided any persuasive guidance.  This Court is also unsure that a Colorado court faced with a PHEW retaliation claim would adopt the approach set forth in *Taylor v. Regents of University of Colorado*, 179 P.3d 246 (Colo. App. 2007), *cert. denied*, 2008 WL 698982 (Mar. 17, 2008).  In *Taylor*, the Colorado Court of Appeals construed a retaliation claim brought under the Colorado State Employee Protection Act ("CSEPA").  *Taylor*, 179 P.3d at 250; *see also* Colo. Rev. Stat. §§ 24-50.5-101 to -107.  The framework adopted in *Taylor*—and relied upon in the recent *Mitchell* decision—requires a plaintiff only to identify a "disciplinary action" taken in response to the plaintiff's whistleblowing.  *Taylor*, 179 P.3d at 248; *Mitchell*, 699 F.Supp.3d at 1158.  But "disciplinary action," defined as "any direct or indirect form of discipline," *Taylor*, 197 P.3d at 248 (quoting § 24-50-102(1)), is a lower bar than the "adverse action" requirement described above.  The PHEW law's anti-retaliation provision does not mention "disciplinary action" and instead targets employers who "discriminate, take adverse action, or retaliate against" workers who raise health or safety concerns.  § 8-14.4-102(1).

Thus, while the PHEW law is styled as a whistleblower law, the statutory language of its retaliation provision more closely resembles the CWA rather than the CSEPA. *Compare* CWA § 8-4-120(1)(a) ("An employer shall not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against" employees who assert their wage and hour rights), *with* CSEPA § 24-50.5-103(1) ("[A]n appointing authority or supervisor shall not initiate or administer any disciplinary action against an employee on account of the employee's disclosure of information.").

In short, whether a PHEW retaliation claim should be governed by the CSEPA framework, the CWA approach, or something else altogether is an open question. This Court respectfully declines to make an unguided guess on the subject. *See Merrifield*, 654 F.3d at 1085–86 ("An authoritative state court ruling on the novel state-law claim should be permitted, instead of a guess or uncertain prediction by a federal court." (cleaned up)). Because the Court declines to exercise supplemental jurisdiction over Plaintiff's PHEW claim, Count Five is **DISMISSED without prejudice**. *See VR Acquisitions, LLC v. Wasatch City*, 853 F.3d 1142, 1149–50 (10th Cir. 2017) (ordering dismissal without prejudice where district court declined supplemental jurisdiction over state law claims).

## VI.    Count Six:  HFWA Interference and Retaliation

The Court is aware of no Colorado courts that have addressed an HFWA retaliation claim. Unlike Plaintiff's PHEW claim, however, the Court need not reach any novel state law questions to resolve the Motion as to Count Six, because the Court agrees with Defendant that Plaintiff fails to sufficiently allege that he is entitled to HFWA protection in the first place. [Doc. 43 at 16–17]. The HFWA provides that "[a]n employer shall not take

retaliatory personnel action or discriminate against an employee or former employee because the person has exercised, attempted to exercise, or supported the exercise of rights protected under [the HFWA], including the right to request or use paid sick leave." Colo. Rev. Stat. § 8-13.3-407(2)(a). Nowhere in the Amended Complaint does Plaintiff allege that he attempted to use "paid sick leave" or any other right protected by the HFWA. *See generally* [Doc. 33]. Of the two relevant instances that Plaintiff identifies, one involved a leave request that was expressly for FMLA leave, not paid sick leave. *Compare* [*id.* at ¶ 28], *with* [*id.* at ¶ 156]. The other was a generic PTO request, with no mention of sick leave. [*Id.* at ¶¶ 77–80]. The Court therefore concludes that Plaintiff fails to adequately allege that he "attempted to exercise" any right protected by the HFWA. The Motion is **GRANTED** as to Count Six, and Count Six is **DISMISSED without prejudice**.

## VII. Count Seven: COMPS Order Retaliation

Mr. Schlagel seeks to recover under the COMPS Order for Defendant's alleged retaliation against him after he complained that Defendant's policies prevented him from providing his employees the paid meal and rest breaks guaranteed by the COMPS Order. [*Id.* at ¶¶ 163–68]. Defendant counters that the COMPS Order contains "no mechanism for a retaliation claim." [Doc. 43 at 16; Doc. 52 at 8].

The COMPS Order authorizes private suit by "[a]n employee receiving less than the full wages or other compensation owed." COMPS Order § 8.1(A).[10] It also prohibits

---

[10] When citing to the COMPS Order, the Court includes only the sections within the COMPS Order and omits the Colorado Code of Regulations citation information. Thus, the Court cites to Section 8.1 of the COMPS Order as COMPS Order § 8.1 rather than 7 Colo. Code Regs. § 1103-1-8.1.

employers from retaliating against "any person" for "any actual or anticipated investigation, hearing, complaint, or other process or proceeding relating to a wage claim, right, or rule." § 8.5. However, the COMPS Order's "reprisal" provision does not create a freestanding cause of action for retaliation. *Id.* Instead, the provision provides that "[v]iolators may be subject to penalties" under, inter alia, the CWA's anti-retaliation provision. *Id.*; *see also* Colo. Rev. Stat. § 8-4-120. This is consistent with the language in the CWA that authorizes private suit for retaliation or discrimination against employees who complain about violations of the CWA or "any other law or rule related to wages or hours." § 8-4-120(1). Thus, the COMPS Order's plain text makes clear that retaliation claims should be brought under the CWA or other statutes rather than the COMPS Order itself. Neither Party has asked the Court to infer a private cause of action from the COMPS Order's reprisal provision, and the Court sees no reason to undertake such an analysis when the regulatory text already prescribes a procedure for individuals who wish to bring private suit to enforce its provisions. *Cf. Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 923 (Colo. 1997) ("Whenever a claimant alleges that a statute, ordinance, or regulation implicitly creates a private right of action, the critical question is whether the legislature intended such a result."). Nor will the Court construe Count Seven as a CWA claim where Plaintiff has already pled a CWA claim and has been represented by counsel since the inception of this litigation. *See Alsamir v. U.S. Citizenship & Immigr. Servs.*, No. 06-cv-01751-WDM-BNB, 2007 WL 1430179, at *1 (D. Colo. May 14, 2007) (observing that because the plaintiffs were represented by counsel, they were not entitled to liberal construction of their pleadings). Accordingly, Count Seven is **DISMISSED without prejudice**.

VIII.    **Count Eight:  Disability Discrimination**

Count Eight alleges that Defendant violated the ADA and CADA[11] by discriminating against Mr. Schlagel based on his disability status.  *See* [Doc. 33 at ¶¶ 169–76].  The same discriminatory conduct described above underlies this claim:  Mr. Schlagel alleges that Defendant "demoted [him], reduced his pay, [and] denied him benefits."  [*Id.* at ¶ 173].  Defendant argues that Count Eight should be dismissed because Mr. Schlagel fails to allege that he suffers from a qualifying disability.  [Doc. 43 at 17–19].

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); *see also* § 12111(2).  Because Mr. Schlagel alleges no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to his discrimination claim.  *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020).  To survive the Motion, then, Mr. Schlagel must state a prima facie claim for disability discrimination by alleging that "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified for the job held or desired; and

---

[11] The CADA and ADA are "parallel statutes," and courts interpret them consistently with one other.  *Aubrey v. Koppes*, 975 F.3d 995, 1004 n.4 (10th Cir. 2020) (citation omitted); *see also* Colo. Rev. Stat. § 24-34-405(6) ("Except when federal law is silent on the issue, this section shall be construed, interpreted, and applied in a manner that is consistent with standards established through judicial interpretation of . . . titles I and V of the federal 'Americans with Disabilities Act of 1990.'").  The Colorado Supreme Court has also stated that the *McDonnell Douglas* framework governs employment discrimination claims under Colorado law.  *Colo. C.R. Comm'n v. Big O Tires*, 940 P.2d 397, 399–401 (Colo. 1997) (en banc).  The Court therefore applies the same analysis to Counts Eight and Nine without distinguishing between the ADA and CADA.

(3) that he was discriminated against because of his disability." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (quotation omitted).

***Disabled Under the ADA.*** An individual is "disabled" within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (quotation omitted). Here, Mr. Schlagel alleges that he suffers from "severe anxiety, vertigo, frequent breakdowns, rapid weight loss, panic attacks, insomnia, nightmares, and major chronic depression." [Doc. 33 at ¶ 170]. However, he provides no allegations that his impairment affects any major life activity, much less that it does so substantially. Plaintiff therefore fails to satisfy the ADA's first definition of "disabled." Count Eight fails to the extent that Plaintiff contends he has an eligible disability under this standard.

Alternatively, Mr. Schlagel may still qualify as "disabled" if he was "regarded as having such an impairment." § 12102(1)(C). The "regarded-as" provision applies irrespective of "whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A). So long as the underlying impairment is neither "transitory"— having "an actual or expected duration of 6 months or less"—nor "minor," it can sustain a claim for disability discrimination. *See Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (citing § 12102(3)(B)). Thus, to qualify as disabled for purposes of a regarded-as claim, a plaintiff must allege that: "(1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was

aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Id.* In the Amended Complaint, Mr. Schlagel alleges that he suffered from severe mental health problems, [Doc. 33 at ¶ 170]; that those "ongoing" problems persisted for more than six months, *see, e.g.*, [*id.* at ¶¶ 24, 44, 48]; and that he informed Defendant of his impairment in October 2021, before any alleged discriminatory actions occurred, [*id.* at ¶¶ 23–24]. These allegations suffice to show that Plaintiff was "disabled" under the regarded-as standard and meet the first element of his discrimination claim. And because Defendant does not challenge that Plaintiff was qualified to work as a store manager, the Court proceeds to the third element of a discrimination claim.

***Discrimination and Causation.*** The third element of a discrimination claim requires Plaintiff to allege that he was discriminated against "on the basis of" his disability. § 12112(a). "In order to demonstrate discrimination, a plaintiff generally must show that he has suffered an adverse employment action because of the disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quotation omitted). The "inquiry focuses on whether the circumstances surrounding the adverse employment action give rise to an inference that the action was based on the plaintiff's disability." *Lincoln*, 900 F.3d at 1192–93 (cleaned up). The fact that an employer selected another qualified candidate for a position sought by Plaintiff does not establish an inference of discrimination. *Id.* at 1193. Instead, Plaintiff must allege "some affirmative evidence that disability was a determining factor in the employer's decision." *Id.* (quotation omitted). "[A]ctions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" are one avenue for making such a showing. *Id.* (quotation omitted).

The Court finds that Mr. Schlagel has plausibly alleged that the circumstances surrounding his delayed promotion in January 2022 and placement in a lower-earning store in August 2023 support inferences of discriminatory motive.  As explained above, both of these decisions constitute adverse employment actions.  *See supra* Part III.A.2. The delay in promotion began approximately three months after Defendant learned of Mr. Schlagel's impairment, when Mr. Witherspoon denied Mr. Schlagel's request to enter a lottery for a store manager position.  [Doc. 33 at ¶¶ 37–40].  Mr. Witherspoon also allegedly told Mr. Schlagel that he would not be considered for a store manager position due to his inquiries regarding FMLA leave.  [*Id.* at ¶ 40].  These allegations support an inference of discriminatory motive.  While Mr. Witherspoon's comment did not expressly address Mr. Schlagel's mental health conditions, it was made by a decision-maker and directly related to the adverse action.  *Cf. Rutledge v. Bd. of Cnty. Comm'rs*, No. 22-3081, 2023 WL 4618335, at *9 (10th Cir. July 19, 2023) (finding remark by non-decisionmaker that was isolated and unrelated to challenged action did not give rise to inference of discrimination).  The Court reaches the same conclusion for Mr. Schlagel's placement at a lower-earning store upon his return from FMLA leave.  Mr. Schlagel alleges that, after he requested accommodations for his mental health in June 2023, Defendant kept him on unpaid leave until August 2023, when it reinstated him to the lower-earning location. [Doc. 33 at ¶ 55].  The Court finds that this intervening adverse act, combined with Mr. Witherspoon's prior remark, supports an inference of discriminatory motive for purposes of a prima facie discrimination claim.  *Lincoln*, 900 F.3d at 1193.  The Court concludes that Mr. Schlagel has alleged a prima facie case for regarded-as disability discrimination based on his delayed promotion and placement at a lower-earning store.  To the extent

that Count Eight asserts a claim on these bases, the Motion is **DENIED**.  Count Eight is **DISMISSED without prejudice** as to all other alleged discriminatory conduct.

## IX.    Count Nine:  Disability Retaliation

Count Nine alleges that Defendant retaliated against Mr. Schlagel for requesting FMLA leave for his disability, for requesting accommodations upon his return to work, and for complaining of disability discrimination.  [Doc. 33 at ¶¶ 71–72, 178–79].  The architecture for an ADA retaliation claim should now feel familiar.  Mr. Schlagel alleges no direct evidence of retaliation, so *McDonnell Douglas* applies, and Mr. Schlagel must state a prima facie claim for retaliation.  *Lincoln*, 900 F.3d at 1209.  Thus, he must allege that:  "(1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action."  *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1187 (10th Cir. 2016) (cleaned up).  While the ADA's retaliation provision does not expressly protect requests for accommodation, *see* 42 U.S.C. § 12203(a), the Tenth Circuit has recognized that such requests may qualify as protected activity under the ADA, *Foster*, 830 F.3d at 1188 & n.6.

Here, Defendant does not contest that Mr. Schlagel's request for accommodations or discrimination complaint were protected activity.  *See* [Doc. 43]; *see also* [Doc. 33 at ¶ 52].  Defendant instead argues that Mr. Schlagel cannot assert an ADA claim based on retaliation for his FMLA leave request because the ADA does not protect rights granted by the FMLA.  [Doc. 43 at 19–20].  The Court agrees.  The Department of Labor has clarified that "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA]."  29 C.F.R.

§ 825.702(a).    Each statute's retaliation provision protects individuals who oppose practices made unlawful by the respective statute.    *Compare* 42 U.S.C. § 12203(a) (ADA), *with* 29 U.S.C. § 2615(a)(2).    Accordingly, Plaintiff's request for FMLA leave was not "protected activity" under the ADA.    *See McCormack v. Blue Ridge Behav. Healthcare*, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021) (collecting cases).    Count Nine fails insofar as it attempts to recover under the ADA for alleged retaliation based on Mr. Schlagel's leave request.

The Court has already decided the remainder of the issues raised by Count Nine. Plaintiff cannot recover under the ADA for retaliation over his discrimination complaint, because the only alleged adverse action that took place subsequent to the complaint was his constructive discharge.    *See* [Doc. 33 at ¶¶ 70, 72, 84].    The Court rejected Plaintiff's constructive discharge argument, *supra*, in Part III.B.    Conversely, Count Nine may go forward based on Plaintiff's assignment to a lower-earning store.    As alleged, the assignment was an adverse action, *see supra* Part III.A.2, and occurred approximately two months after Plaintiff's protected activity, with an additional intervening act that implies discriminatory motive, *see supra* Part VIII; *see also Annett*, 371 F.3d at 1240–41 (holding that two to three month period between protected activity and alleged retaliatory action was sufficiently proximate to establish prima facie case of causation).    Accordingly, the Motion is **DENIED** insofar as Count Nine seeks to recover for Plaintiff's alleged assignment to a lower-earning store.    With respect to all other alleged retaliatory conduct, Count Nine is **DISMISSED without prejudice**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc.
43] is **GRANTED in part** and **DENIED in part**;

(2)    The Motion is respectfully **DENIED** as to Count One;

(3)    Count Two is respectfully **DISMISSED in part** as set forth above;

(4)    Counts Three, Four, Five, Six, and Seven are respectfully **DISMISSED
without prejudice**;

(5)    Count Eight is respectfully **DISMISSED in part** as set forth above; and

(6)    Count Nine is respectfully **DISMISSED in part** as set forth above.

DATED:  January 28, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge